UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

In re
    LEGACY HEALTHCARE, LLC,

                      Debtor,

---

LEGACY HEALTHCARE, LLC., et al.,

                Plaintiff-Appellees,
                                                  DECISION AND ORDER
       v.                                             09-CV-1102A
                                                         09-CV-1103A

THE STATE OF NEW YORK, et. al.,

                Defendants-Appellants.

---

## **INTRODUCTION**

        Defendant-Appellant New York State Department of Health ("DOH") appeals from an order of Bankruptcy Judge Hon. Michael J. Kaplan granting summary judgment in favor of plaintiff-appellee Legacy Healthcare LLC ("Legacy") on its claim of estoppel against DOH and enjoining DOH from effecting the closure of Williamsville Suburban Nursing Home ("Williamsville Suburban"), an entity owed and operated by Legacy.

        For the reasons stated, the decision of the bankruptcy court is reversed, and summary judgement is granted in favor of DOH.

## BACKGROUND

A.  **Bankruptcy Proceedings**

Legacy owns and operates several nursing homes, including Williamsville Suburban Nursing Home ("Williamsville Suburban"). In February 2005, Legacy filed a Chapter 11 bankruptcy petition. Bankruptcy Judge Hon. Michael J. Kaplan presided over the bankruptcy proceedings and defendant-appellant DOH participated in the bankruptcy proceedings as a creditor. DOH was one of many creditors and was owed about $6.6 million for, *inter alia*, Medicaid overpayments and unpaid cash receipt assessment taxes.

Legacy's assets and liabilities were ultimately reorganized pursuant to a plan of reorganization that included a repayment of Legacy's debt to DOH over a nine-year period. In January 2006, DOH and other creditors voted in favor of Legacy's reorganization plan, and the plan was confirmed by the bankruptcy court on June 6, 2006.

B.  **Berger Commission**

In April 2005, the New York State legislature enacted legislation creating the Commission on Health Care Facilities in the 21st Century, commonly referred to as the "Berger Commission." The Berger Commission was charged with "examining the system of general hospitals and nursing homes in New York State and recommending changes to that system" in light of various factors specified in the enabling legislation. *See* N.Y. Laws 2003, c. 63, at §§ 2(a) and 5. The Commission consisted of 18

statewide members, 6 regional members, and 12 regional advisory committee members. The statewide and regional members, as well as the regional advisory committee members, were appointed directly by the Governor and legislative leaders. The regional advisory committee for the Western New York area included doctors and hospital administrators, but no government officials.

The enabling legislation directed DOH to provide support services to the Commission, and required DOH to appoint representatives to serve as liaisons between DOH and the Commission. *Id.* at § 4. DOH employee Neil Benjamin was assigned to serve as a liaison between the Commission and DOH.

Once constituted, the Commission spent the remainder of 2005 and part of 2006 gathering information about every hospital and nursing home in New York State. The Commission identified "facilities of interest" that were candidates for closure or restructuring. Each facility of interest was afforded the opportunity to meet with Commission members to provide their own perspective and to update the Commission as to information that the Commission might not otherwise be aware. Williamsville Suburban was identified as a facility of interest and was given the opportunity to meet with Commission and regional advisory committee members in June 2006. However, when Commission members visited Williamsville Suburban for that purpose, Legacy employees refused to meet with the Commission, to provide information or to otherwise cooperate with the Commission.

On November 28, 2006, the Commission publicly issued its report which*, inter alia*, recommended the closure of Williamsville Suburban. The Commission found that there existed a surplus of long-term nursing care in Erie County, and that to remedy this

3

surplus, Williamsville Suburban should be closed.  In making this recommendation, the Commission noted that the facility provided poor quality of care, as evidenced by a high number of deficiencies found in its annual surveys.  The recommendation to close Williamsville Suburban was just one of the many recommendations made by the Commission.  The Commission's recommendations became binding after the Governor and New York State Legislature failed to reject them.  Under the legislation, DOH then became obligated to implement the Commission's binding recommendations by June 30, 2008.

On January 31, 2007, DOH notified all affected facilities, including Williamsville Suburban, that it intended to implement the Commission's binding recommendations by June 30, 2008.

### C. Adversary Proceeding

In response to the Commission's recommendation to close Williamsville Suburban, Legacy commenced an adversary proceeding in bankruptcy court against DOH and several other state agencies and officials on December 29, 2006.  Legacy also moved to modify its confirmed reorganization plan.

On April 15, 2008, Legacy filed an amended complaint seeking, *inter alia*, a declaratory judgment enjoining DOH from implementing the Commission's recommendation to close Williamsville Suburban on the grounds of equitable estoppel.  Legacy asserted that DOH knew or should have known (prior to June 2006 when the reorganization plan became effective) that Williamsville Suburban would be targeted for

closure by the Commission and that its failure to advise the bankruptcy court of that potential outcome led Legacy and the bankruptcy court to detrimentally rely on DOH's silence. Legacy asserts that it relied to its detriment by incurring thousands of dollars in professional fees working toward negotiating and preparing a reorganization plan. Legacy asserts that its reliance provides a basis to estop DOH from implementing the closure of Williamsville Suburban.

Both parties moved for summary judgment on the estoppel claim. On September 29, 2009, the Bankruptcy Court granted plaintiff's motion for summary judgment and permanently enjoined DOH from closing Williamsville Suburban. Judge Kaplan found that "manifest injustice" would be suffered by the other parties to the bankruptcy case if DOH was not estopped from "denying the benefits of what it supported in [bankruptcy court] in conjunction with the debtor's plans." *See* Dkt. 139 in Adv. Proc. 06-40197 (Bankr. W.D.N.Y.)(Tr. of Bankruptcy Court's Oral Ruling, at 106-07).

On December 15, 2009, DOH appealed the bankruptcy court's September 29, 2009 order and injunction. Legacy opposed the appeal and on May 7, 2010, this Court heard oral argument.

## **DISCUSSION**

This Court reviews the Bankruptcy Court's order of summary judgment *de novo*, making all factual inferences in favor of the non-moving party. *In re Blackwood Assocs.*, L.P., 153 F.3d 61, 67 (2d Cir.1998). The standards for summary judgment are well

5

settled. A court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).

The bankruptcy court found that Legacy was entitled to summary judgment on its claim of estoppel. Estoppel is an equitable doctrine invoked when a party is induced to act to his or her detriment in reliance on conduct of the other party. *See Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982). The doctrine of equitable estoppel "preclude[s] a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted." *Shondel J. v. Mark D.*, 7 N.Y.3d 320, 326 (N.Y. 2006); *see also Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 436 N.E.2d 1265, 1269 (N.Y. 1982) (noting that equitable estoppel "is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable

6

reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought"). "The law imposes the doctrine as a matter of fairness. Its purpose is to prevent someone from enforcing rights that would wok injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been mislead into a detrimental change of position." *Shondel J.*, 7 N.Y.3d at 326.

A party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment. *See Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001); *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995). A party asserting estoppel must show with respect to itself: (1) a lack of knowledge and the means of which to acquire knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in their positions. *See In re Vebeliunas*, 332 F.3d 85, 93 (2d Cir. 2003).

Generally, estoppel may not be applied against a governmental entity. See *Drozd v. INS*, 155 F.3d 81, 90 (2d Cir. 1998)("The doctrine of equitable estoppel is not available against the government except in the most serious of circumstances and is applied with the utmost caution and restraint.")(internal citation and quotation omitted); *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir.1994) ("'[T]he principle of equitable estoppel is not applied to the Government on the same terms as it is to private citizens.'")(quoting *United States v. Boccanfusco*, 882 F.2d 666, 669 (2d Cir.

7

1989)); *see also Hamptons Hospital & Medical Center, Inc., v. More*, 52 N.Y.2d 88 (1981)("The doctrine of estoppel is not applicable to the State acting in a governmental capacity."). In Hamptons Hospital, the New York Court of appeals stated that "it would be unthinkable that [a government agency] through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment." Accordingly, the doctrine of estoppel is available against the government "only in those limited cases were the party can establish both that the [g]overnment made a misrepresentation upon which the party reasonably and detrimentally relied and that the [g]overnment engaged in affirmative misconduct." *City of New York*, 34 F.3d at 1168.

The bankruptcy court erred in granting summary judgment in favor of Legacy as to its estoppel claim.[1] Instead, summary judgment should have been granted in favor of DOH. Even viewing the facts in the light most favorable to Legacy, Legacy has failed to show that there was affirmative misconduct by DOH. Importantly, Legacy fails to identify any affirmative misrepresentation made by DOH. Legacy appears to take issue with DOH's silence, as opposed to any affirmative misrepresentation. In essence, Legacy asserts that certain DOH employees - in particular Neil Benjamin - knew that Williamsville Suburban was being targeted by the Commission for closure, and despite that knowledge, DOH (along with the other Chapter 11 creditors) voted in favor of the bankruptcy confirmation plan even though it knew that the plan would be unsustainable if Williamsville Suburban were to close. In other words, Legacy claims that DOH knew

---

[1] In his ruling, Judge Kaplan cited *Albion Disposal, Inc. v. Slater*, 217 B.R. 394 (W.D.N.Y. 1997), in support of his ruling. It is not clear to this Court how the facts of that case support Judge Kaplan's ruling. Accordingly, *Albion Disposal* is not addressed in this opinion.

8

that implementation of the confirmed bankruptcy plan hinged on the operation of all of Legacy's nursing home beds, including the 220 beds at Williamsville Suburban, but yet failed to advise the bankruptcy court that Williamsville Suburban was being targeted for closure. Instead, DOH voted in favor of the confirmation plan.

At the outset, it is noted that DOH disputes that it had any knowledge that the Commission would recommend closing Williamsville Suburban. (*See* DOH Memo. of Law in Support fo Appeal, Dkt. 14, at 4 ("DOH . . . had no knowledge that the Commission would consider and recommend the closure of Williamsville Suburban" because "the Commission kept its deliberations confidential until it publically released its recommendations in November 2006.")). DOH claims that it first learned of the Commission's decision on November 28, 2006, when the Burger Commission Report was released to the public. To the extent that Legacy asserts that DOH was aware of the Commission's "probable recommendation" to close Williamsville Suburban before November 28, 2006 (*see* Dkt. 15, at 20), that is a disputed issue of fact. However, the existence of that disputed fact does not preclude the granting of summary judgment because the Court finds that it is immaterial to the issue of estoppel. That is, even if DOH was aware that the Commission would "probably" recommend closure of Williamsville Suburban but failed to notify the bankruptcy court of that circumstance, that fact does not entitle Legacy to estoppel.

As noted, estoppel is available against a government entity only in very limited circumstances and requires a finding that the government engaged in affirmative misconduct. Assuming *arguendo* that DOH was aware of the Commission's "probable recommendation" to close Williamsville Suburban, its failure to notify the bankruptcy

9

court and Legacy at most amounts to mere negligence, which is insufficient to warrant estoppel against a government entity. *See Azizi v. Thornburgh*, 908 F.2d 1130, 1136 (2d Cir. 1990); *United States v. Boccanfusco*, 882 F.2d 666 (2d Cir. 1989).

In any event, Legacy knew or should have known that the potential for closure of Williamsville Suburban existed. By its very terms, the enabling legislation charged the Commission with examining all hospitals and nursing homes with an eye toward minimizing the excess capacity. It is inconceivable that Legacy believed that the existence of its pending reorganization somehow exempted it from Commission scrutiny, particularly in light of its record of poor quality of care and a high number of deficiencies.[2] To the extent that Legacy interpreted DOH's vote in favor of the confirmation plan as a sign that it was now beyond the scope of the Berger Commission's reach, such an interpretation would be unreasonable, and any reliance upon that vote as a sign that Williamsville Suburban was safe from closure was unjustified as a matter of law. *See Boccanfusco*, 882 F.2d at 670 (reiterating as a "fundamental" principle that there can be no estoppel without justifiable reliance).

Nor can DOH be faulted for failing to provide the Commission with updated information concerning Williamsville Suburban. Legacy claims that Neil Benjamin - the DOH employee assigned to act as a liaison to the Commission - failed to notify the Commission of Legacy's pending bankruptcy, failed to provide updated financial information to Commission about Williamsville Suburban, and failed to inform the

---

[2] As justification for its recommendation to close Williamsville Suburban, the Commission cited the poor quality of care provided by the facility and an "extremely high number of deficiencies." *See* Commission Report, at 216.

Commission that the Legacy facilities were under new management.  The undisputed facts demonstrate that Legacy had ample opportunity to provide that information directly to the Commission on its own behalf, but failed to do so.  Every facility identified by the Commission as "facility of interest" (i.e. candidate for closure or restructuring) was provided with the opportunity to meet with the Commission to provide its own perspective and to give the Commission any updated information relevant to the issue of closure.  In June 2006, Commission representatives visited Williamsville Suburban to obtain its perspective.  Legacy failed to avail itself of this opportunity to provide the Commission with updated information concerning its financial condition and the status of its bankruptcy.  Instead, Legacy representatives refused to meet with the Commission, which led the Commission to deem Legacy representatives "uncooperative."[3]   Legacy cannot complain that DOH liaison Neil Benjamin failed to do something that it (Legacy) had ample opportunity to do itself.

## CONCLUSION

Accordingly, for the reasons stated, the Court reverses bankruptcy court's grant of summary judgment in favor of Legacy and grants summary judgment in favor of DOH on Legacy's claim for equitable estoppel.  Additionally, the bankruptcy court's injunction is vacated.

---

[3]Legacy's refusal to meet with the Commission or to provide information stood in stark contrast to the actions of other targeted "facilities of interest" who were evidently clamoring for an audience with the Commission.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: June 21, 2010